Peter Stutheit, OSB No. 061248
Email: peter@stutheikalin.com
Kyann Kalin, OSB No. 060754
Email: kyann@stutheitkalin.com
**STUTHEIT KALIN LLC**
208 SW 1st Avenue, Suite 260
Portland, OR 97204
Phone: (503) 493-7488
Fax:     (503) 715-5670

Jason Rittereiser, OSB No. 211298
Email: jrittereiser@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Fax:     (206) 260-3055

*Attorneys for Plaintiffs*

## UNITED STATES DISCTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| TRACY DAVIES and ASHLEY DEWITT, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>PEACEHEALTH,<br><br>                Defendant. | No. 6:21-cv-00825-AA<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CONDITIONAL CLASS CERTIFICATION** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 4

LR 7-1 CERTIFICATION ................................................................................... 6

MOTION ............................................................................................................ 6

FACTS AND PROCEDURAL HISTORY ............................................................ 7

THE TERMS OF THE SETTLEMENT AGREEMENT ........................................ 8

    I.   Class Definition ....................................................................................... 8

    II.  Settlement Amount .................................................................................. 8

    III. Attorneys' Fees, Litigation Costs, and Class Representative Award ................. 9

    IV. Release and Waiver of Claims .............................................................. 9

    V.  Notice ...................................................................................................... 9

    VI. Settlement Administration ..................................................................... 10

    VII.       Request for Exclusion and Objection Rights ................................. 10

    VIII.     Deadlines Contemplated by Settlement Agreement ......................... 11

AUTHORITY AND ARGUMENT ......................................................................... 11

    I.   The Class Meets the Requirements for Certification. ........................ 12

        A.  The proposed class satisfies Rule 23(a). .......................................... 12

            1.  Numerosity ................................................................................ 12

            2.  Commonality ............................................................................ 12

            3.  Typicality .................................................................................. 13

            4.  Adequacy .................................................................................. 14

        B.  The proposed class satisfies Rule 23(b). ........................................ 14

            1.  Predominance ............................................................................ 15

            2.  Superiority ................................................................................ 16

    II.  The Proposed Settlement Should Be Preliminarily Approved Because It Is Fair, Reasonable, and Adequate. ............................................... 17

A. The proposed Class Representatives and Class Counsel have adequately represented the class. .................................................................................................................... 17

B. The proposed settlement was negotiated at arm's length. .......................................... 17

C. The relief provided for the class is adequate. ............................................................ 18

   1. The relief is adequate considering the costs, risks, and delay of trial and appeal. 18

   2. The proposed method of distributing relief to the class is effective. ................... 20

   3. The relief to the class is adequate considering the terms of the proposed award of attorney's fees, including the timing of payment.................................................. 21

   4. No other agreements exist in connection with the proposal. ............................... 21

D. The proposed settlement treats Class Members equitably. ........................................ 21

E. The proposed settlement passes scrutiny under the Bluetooth factors. ...................... 22

   1. The proposed attorney fee award is not a disproportionate share of the settlement. 22

   2. The existence of a "clear sailing" agreement ........................................................ 23

   3. The settlement agreement does not have a reverter. ............................................. 24

III. The Proposed Class Notice Should Be Approved. .......................................................... 24

A. The notice plan will provide the best notice practicable under the circumstances. ..... 24

B. The Notice contains each element of Rule 23(c)(2)(B) clearly and concisely in plain, easily understood language. .......................................................................................... 25

IV. Plaintiffs Should Be Appointed as Class Representatives and Plaintiffs' Attorneys Should Be Appointed as Class Counsel. ......................................................................................... 26

CONCLUSION ........................................................................................................................ 27

## TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1135, 102 Cal Rptr. 2d 777 (2000)............................................................................................................16

*Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ..............................9, 12, 13

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ............................................9

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)................................................14, 18, 19

*Eisele v. Home Depot U.S.A., Inc.*, No. 3:20-cv-01740-HZ, 2022 U.S. Dist. LEXIS 216588 (D. Or. Nov, 29, 2022) ......................................................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................................11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).................................................10

*Harrison v, Harry & David Operations*, No. 1:18-cv-00410-CL, 2020 U.S. Dist. LEXIS 249313, 2020 WL 8367533 (D. Or. Oct. 21, 2020) ................................................12

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011).................16

*J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256 (D. Or., Feb. 5, 2021).........................................10

*Joffe v. Google, Inc. (In re Google Inc. St. View Elec. Communs. Litig.)*, 21 F.4th 1102 (9th Cir. 2021)................................................................................................9

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. 2011)................................................................................................18, 19, 20

*Kang v. Fyson*, No. 22-15694, 2022 U.S. App. LEXIS 28358 (9th Cir. Oct. 12, 2022) ......................................................................................................................18

*Linney v. Cellular Alaskan Partnership*, 151 F.3d 1234 (9th Cir. 1998) ...............................16

*McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) .............................................19

Newbridge Networks Sec. Litig., 1998 WL 765724 (D.D.C. Oct. 23, 1998).........................16

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982) ............................16

*Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019)..................................................20

*Russell v. Ray Klein, Inc.*, No. 1:19-cv-00001-MC, 2022 U.S. Dist. LEXIS 92881, 2022 WL 1639560 (D. Or. May 24, 2022) ..........................................................................9

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).........................................13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) ...................................10

*West v. Circle K Stores, Inc.*, CIVS040438WBSGGH, 2006 WL 1652598 (E.D. Cal. June 13, 2006) ................................................................................................9

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ....................................13

**Rules**

Fed. R. Civ. P. 23(a)(1) ..............................................................................................10

Fed. R. Civ. P. 23(a)(2) ..............................................................................................10

Fed. R. Civ. P. 23(a)(3) ..............................................................................................10

Fed. R. Civ. P. 23(a)(4) ..............................................................................................11

Fed. R. Civ. P. 23(b)(3) ..........................................................................................12, 21

Fed. R. Civ. P. 23(b)(3)(A)–(D) ...................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................21

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii) ...............................................................................21

Fed. R. Civ. P. 23(e) ..........................................................................................8, 9, 13

Fed. R. Civ. P. 23(e)(1)(B) ..........................................................................................20

Fed. R. Civ. P. 23(e)(2)(A)–(D) ...................................................................................14

Fed. R. Civ. P. 23(e)(2)(C) ..........................................................................................15

Fed. R. Civ. P. 23(g)(1) ..............................................................................................22

Fed. R. Civ. P. 23(g)(1)(A) ..........................................................................................22

**LR 7-1 CERTIFICATION**

Defendant, PeaceHealth, does not oppose this motion.

**MOTION**

Plaintiffs Tracy Davies and Ashley DeWitt, on behalf of the putative class they seek to represent, respectfully move the Court for an order granting this unopposed Motion for Preliminary Approval of Class Action Settlement and Class Certification, pursuant to FRCP 23. Because the settlement satisfies the requirements for preliminary approval, Plaintiffs respectfully request that the Court:

1. Grant certification of the proposed settlement class for purposes of settlement only;

2. Grant preliminary approval of the proposed settlement as fair, reasonable, and adequate;

3. Approve the Class Notice in substantially similar form as Exhibit A to the Settlement Agreement;

4. Direct the Class Notice to be mailed to Class Members;

5. Approve the proposed procedure for class members to object to the settlement or exclude themselves from the settlement;

6. Set deadlines consistent with the corresponding deadlines in the Settlement Agreement for:

   a. The Settlement Administrator to mail the Class Notice to Class Members;

   b. Class Counsel to file their motion for fees, costs, and expenses;

   c. Class Members to object to the settlement, in whole or in part;

   d. Class Members to mail their request to be excluded; and

   e. The Final Approval Hearing to be held;

7. Appoint Plaintiffs as Class Representatives;

8. Appoint Plaintiffs' attorneys, Peter Stutheit and Kyann Kalin of Stutheit Kalin LLC and Jason A. Rittereiser of HKM Employment Attorneys LLP, as Class Counsel;

9.   Appoint JND Legal Administration as the Settlement Administrator as agreed to by the parties.

## FACTS AND PROCEDURAL HISTORY

This is a putative class action to recover unpaid wages. Plaintiffs worked as hourly employees at PeaceHealth's hospitals in Oregon. They allege that PeaceHealth fails to pay hourly employees at PeaceHealth's hospitals in Oregon for all compensable hours through its timeclock rounding policy. Third Am. Class Action Compl. ¶¶ 6–25, ECF No. 11. In particular, Plaintiffs allege that although PeaceHealth uses a time-keeping system to track its hourly employees' time worked, PeaceHealth rounds employees' time punches to the nearest quarter hour. *Id.* at ¶¶ 4–5. For instance, where an employee punches in for work at 7:53, the timekeeping system records the start time for pay purposes as 8:00, denying the employee pay for the first seven minutes of their clocked time. Were an employee to punch out at the end of their shift at, say, 5:07, the timekeeping system would record their end time for pay purposes as 5:00, again denying the employee for the final seven minutes of their shift. The converse is also true: were an employee to punch in at, say, 8:07, their start time would be recorded as 8:00 and they would be paid for 7 minutes that they didn't actually work. *Id.* at 4-5. Thus, it is possible for employees to gain or lose time under the system depending on when they punch into the system.

Plaintiffs allege that in aggregate, PeaceHealth employees are systematically denied regular and overtime pay for all hours worked under the system because as a group they tend punch disproportionately during the time periods that benefit PeaceHealth. *Id.* at ¶¶ 7–10.

PeaceHealth has consistently denied all allegations of wrongdoing. *See, e.g.*, Answer to Third Am. Class Action Compl., ECF No. 12.

On August 11, 2022, the parties participated in a full-day, private, arm's-length mediation before Eric O. English of Resolution Strategies LLP. Mr. English is an experienced class action mediator with extensive knowledge of Oregon's wage and hour laws. Stutheit Decl. ¶ 9. The parties were unable to settle at the mediation. They continued negotiating with Mr. English's assistance and eventually reached agreement on the material terms of a settlement on February

17, 2023. *Id*. The parties executed a long-form agreement containing all the terms of the settlement in April 2023. Stutheit Decl. Ex. A ("Settlement Agreement"). Plaintiffs now present those terms for the Court's preliminary approval.

**THE TERMS OF THE SETTLEMENT AGREEMENT**

Plaintiffs offer the following summary of the terms of the proposed Settlement Agreement.

## I.    Class Definition

For settlement purposes, the proposed "Class" means all hourly, non-exempt PeaceHealth employees who worked in the State of Oregon at any time within the period of April 20, 2015 to April 1, 2023.

## II.    Settlement Amount

For the benefit of all Class Members, Defendants will pay a total, all-in settlement amount of $7,350,000.00 into a settlement fund ("Gross Settlement Amount"). This amount will be used to satisfy the following categories of recovery: (1) any class representative service award to Plaintiffs the Court approves; (2) an award of attorneys' fees to Class Counsel that does not exceed 25% of the Gross Settlement Amount ($1,837,500), plus actual litigation costs approved by the Court; (3) the employer's share of payroll taxes; and (4) payment of settlement administrator fees and expenses estimated to be $65,000 from the Gross Settlement Amount. The amount remaining after deductions for these payments is the Net Settlement Fund ("NSF"), which will be used to pay participating Class Members. Settlement Agreement ¶¶ 32–33.

The NSF will be distributed fairly to participating Class Members based on the degree to which PeaceHealth's practices allegedly harmed them. Each Class Member's payment ("individual settlement payment") will be calculated proportionally based on the amount of wages they would have been paid for the net amount of clocked-in time that rounded in PeaceHealth's favor under the timeclock rounding policy. Settlement Agreement ¶ 33(a). Class Members who were not clocked in for more time than they were paid under PeaceHealth's

rounding policy will receive a payment of $25 in exchange for their release of claims based on rounding. Settlement Agreement ¶ 33(a).

The payments to each class member will be characterized as 40% "wages" from which mandatory withholdings will be deducted (including the Employer's share of payroll taxes) and 60% non-wages from which no withholdings will be deducted. Settlement Agreement ¶ 33(b). The amount of each individual settlement payment to participating Class Members depends on a number of factors, including the amount of attorneys' fees and costs awarded by the Court, the costs of claims administration, the number of Class Members who decide to exclude themselves from the settlement, and each Class Member's number of shifts worked and clocking behavior.

### III.    Attorneys' Fees, Litigation Costs, and Class Representative Award

Plaintiffs will request attorneys' fees to Class Counsel in an amount that does not exceed 25% of the Gross Settlement Fund, plus actual litigation costs, which Defendant will not oppose. Settlement Agreement ¶ 32(a). These litigation costs are currently $19,353.63. Stutheit Decl. ¶ 11. Plaintiffs will request a class representative service award of $7,500.00 each, which Defendant will not oppose. Settlement Agreement ¶ 32(b).

### IV.    Release and Waiver of Claims

In exchange for the benefits provided under the settlement, Class Members who do not opt out will irrevocably release any and all wage and hour claims that were, or could have been, asserted in the Action based on the facts alleged and legal theories actually alleged. Settlement Agreement ¶¶ 45, 49.

### V.    Notice

Written notice of the proposed settlement will be provided to all Class Members by first class mail no later than 30 days from the Court's entry of an order granting preliminary approval of the settlement. Settlement Agreement ¶ 37. The Class Notice states the nature of the action; the definition of the class certified; the basis of the claims alleged in the lawsuit; their rights under the settlement agreement; how Class Members can exclude themselves from the settlement and the deadline to do so; how and by when to object to the Settlement, including that they may

enter an appearance through an attorney if they so desire; and contact information for the Settlement Administrator and Class Counsel. A true and correct copy of the agreed Notice of Proposed Class Action Settlement ("Notice") is attached as Exhibit A to the settlement agreement. Class Members will have 30 calendar days from the mailing of the Notice to submit their written request to opt out or object to the settlement. Settlement Agreement ¶ 40.

## VI.    Settlement Administration

The parties have agreed to use JND Legal Administration (JND) as the Settlement Administrator in this case. JND routinely handles large and complex class action administrations and was named as the country's #1 class action claims administrator by the National Law Journal.[1]

JND will administer all aspects of the settlement, including but not limited to distributing the Class Notice, processing Class Members' requests for exclusion, calculating individual settlement payments according to Defendant's employment records, and processing settlement payments to the Class Members. Additionally, the Settlement Administrator is responsible for delivering to Class Counsel checks for the Court-approved attorneys' fees and litigation costs. Settlement Agreement ¶¶ 40–48.

## VII.   Request for Exclusion and Objection Rights

Class Members will have an opportunity to opt out of the settlement by mailing a written request for exclusion to the Settlement Administrator. Settlement Agreement ¶¶ 40–42. All requests for exclusion must be in writing and postmarked within 30 calendar days from the mailing of the Notice of Settlement. *Id.* at ¶ 41. To be valid, the request for exclusion must be postmarked by this deadline and contain the Class Member's name, address, and signature, and clearly state their request to be excluded from the settlement. *Id.*

---

[1] *See JND Legal Administration Named #1 Class Action Claims Administrator by The National Law Journal*, JND (Apr. 4, 2023, 10:00 AM), https://www.jndla.com/jnd-legal-administration-named-best-class-action-claims-administrator-by-the-national-law-journal.

## VIII.    Deadlines Contemplated by Settlement Agreement

The following table sets out the proposed deadlines:

| EVENT | SCHEDULED DATE |
|---|---|
| Deadline for mailing Notice | 30 days after entry of Preliminary Approval Order |
| Deadline to Request Exclusion or Object | 30 days after mailing of Notice |
| Settlement Administrator jointly certifies to Class Counsel and Defendant's counsel the number of requests for exclusion | 45 days after mailing of Notice |
| Final Fairness Hearing | No earlier than 90 days after mailing of CAFA notice by Defendant, and no later than 50 days after this deadline. **(HEARING DATE TO BE SET BY THE COURT)** |
| Deadline for Defendant to transmit SSNs to Settlement Administrator | 10 days after the Settlement Effective Date |
| Deadline for Defendant to transfer the Gross Settlement Amount to Settlement Administrator | 15 days after the Settlement Effective Date |
| Payment of Settlement Payments to Class Members and Payment of Attorneys' Fees and Costs to Class Counsel | Within 30 days after Settlement Effective Date |
| Deadline for Class Members to cash or deposit Individual Settlement Payment Checks | 180 days from the mailing of Payment to Settlement Class Members |

# AUTHORITY AND ARGUMENT

Class action settlements require court approval. Fed. R. Civ. P. 23(e). The approval of a class action settlement takes place in two stages: preliminary approval and final approval. *E.g.*, *Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-cv-1528-JR, 2022 U.S. Dist. LEXIS 99708, at *6 (D. Or. May 17, 2022).

First, the Court must determine if the proposed class satisfies the class certification requirements in Rule 23(a)–(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613–14, 117 S. Ct. 2231 (1997) (describing class-action prerequisites). If certification requirements are satisfied, the Court evaluates the settlement to determine if it is "fair, reasonable, and adequate" under Rule 23(e). *E.g.*, *Russell v. Ray Klein, Inc.*, No. 1:19-cv-00001-MC, 2022 U.S. Dist. LEXIS

92881, 2022 WL 1639560, at *4 (D. Or. May 24, 2022). If the Court grants preliminary approval of the settlement, it must "direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* (quoting Fed. R. Civ. P. 23(e)). Then, the Court holds a final hearing for Class Members to respond to the Notice and raise objections, *id.* at *5, and determines whether to finally approve the settlement.

## I.    The Class Meets the Requirements for Certification.

Whether a class can be certified requires a two-prong approach. *Russell*, 2022 U.S. Dist. LEXIS 92881, at *5. The first prong is that the class meets the four requirements of Rule 23(a).[2] *Id.* at *5–6. The second prong is that the class falls into one of three class action categories under Rule 23(b). *Id.* at *5.

### A.    The proposed class satisfies Rule 23(a).

Rule 23(a), the first prong, has four prerequisites to class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The proposed class here meets each of these requirements.

#### 1.    Numerosity

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a "rough rule of thumb" Oregon district courts use a threshold of 40 class members as sufficient to meet the numerosity requirement. *E.g.*, *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or., Feb. 5, 2021). In this case, the parties estimate that the class consists of approximately 11,000 members. *See* Stutheit Decl. ¶ 12. Numerosity is therefore met.

#### 2.    Commonality

---

[2] Although some courts also find an implicit requirement of "ascertainability," the Ninth Circuit has declined to adopt this requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017); *see also Joffe v. Google, Inc. (In re Google Inc. St. View Elec. Communs. Litig.)*, 21 F.4th 1102, 1115–16 (9th Cir. 2021) (rejecting the argument that certification is improper if it is practically impossible to identify absent class members at the time of certification). Even if "ascertainability" was required, in this case absent Class Members are readily identifiable through Defendant's records.

Commonality requires that the class has common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This means that the class members need to have suffered the same injury and their claim depends on a common contention, the "determination of its truth or falsity [must be able to] resolve an issue that is central to the validity of [each claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011).

Here, the Class Members have allegedly suffered the same injury: unpaid wages due to PeaceHealth's uniform timeclock rounding policy to which all class members were subject. Third Am. Compl. ¶¶ 15 (regular wages), 18 (overtime wages), 21 (penalty wages), 24 (penalty wages). Their claim for unpaid wages, in all its forms, depends on a common contention: Defendant's policies and practices of rounding employee time systematically undercompensated employees for time worked. *Id.* at ¶ 10. Determining whether that common contention is true can be resolved in one stroke: under Plaintiffs' theory, compensability looks solely at the employer's policies and practices. *Id.* at ¶¶ 3–10. Thus, commonality is met.

### 3. Typicality

To be certified as a class, either the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotations removed).

In this case, Plaintiffs' claim stems from the same course of conduct—Defendant's timeclock rounding—that forms the basis of the class claim. Each Class Member's claim is based on the same facts and legal theories: each Class Member was an hourly, non-exempt employee of Defendant in Oregon during the class period; each Class Member was entitled under Oregon law to be paid for hours worked, including overtime hours at time and a half; each Class Member was subject to Defendant's policies and practices; Defendant's policies and practices allegedly systematically deprived Class Members of pay for hours worked; and each Class

Member's claim for damages is provided by Oregon statute. The class meets the typicality requirement.

### 4. Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), which is resolved by two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

This case has no conflicts of interest between Class Members and the named plaintiffs or their counsel. Stutheit Decl. ¶ 14. Plaintiffs have the same claims as other Class Members—unpaid wages—which are based on the same practice and course of conduct by Defendant. As discussed below, the proposed settlement, if approved by the Court, will calculate each individual settlement payment using the same formula for injuries that occurred within the same time period. Further, Plaintiffs' counsel will seek a percentage of the common fund for payment of attorney fees, which incentivizes them to negotiate the largest possible amount in settlement for the class. Accordingly, Plaintiffs, their counsel, and Class Members' interests are all aligned, rather than in conflict.

Plaintiffs have demonstrated their commitment to this case by hiring experienced counsel, responding to written discovery requests, and producing documents. Stutheit Decl. ¶ 14. Plaintiffs' counsel are experienced in handling wage-and-hour class actions and have already devoted substantial time and resources to investigating the Class Members' claims and, for the past two years, prosecuting this case. Stutheit Decl. ¶¶ 2–5. Moreover, they have extensive experience with Defendant's timeclock rounding policy and practice by having litigated the same claim in Washington up to the eve of trial. Stutheit Decl. ¶ 8. Adequacy is met.

### B. The proposed class satisfies Rule 23(b).

Certification requires that the action qualify as one of the enumerated types of class action. Fed. R. Civ. P. 23(b). The third type requires "that the questions of law or fact common to

class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

### 1. Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The Ninth Circuit has emphasized that common employment policies and practices are frequently central to the predominancy analysis, and where such policies are present, predominance is rarely defeated." *Harrison v, Harry & David Operations*, No. 1:18-cv-00410-CL, 2020 U.S. Dist. LEXIS 249313, *25, 2020 WL 8367533 (D. Or. Oct. 21, 2020) (certifying wage claim based on timeclock rounding) (internal citation and quotation marks omitted), *R. & R. adopted*, No. 1:18-cv-00410-CL, 2021 WL 1135022 (D. Or. Mar. 24, 2021). Accordingly, federal district courts regularly certify rounding cases just like this one. *See, e.g.*, *Mendez v. R±L Carriers, Inc.*, C 11-2478 CW, 2012 WL 5868973, at *17 (N.D. Cal. Nov. 19, 2012) (certifying rounding class of hourly drivers based at multiple different terminals across California); *McClean v. Health Sys., Inc.*, 11-03037-CV-S-DGK, 2012 WL 607217, at *4 (W.D. Mo. Feb. 23, 2012) (finding predominance in claim involving 3,500 healthcare workers across sixty facilities because "policies are uniform" and defendant's "own records would provide the necessary evidence to establish a *prima facie* case that Defendant engages in unlawful rounding away of work time"); *accord Cruz v. Unilock Chicago*, 383 Ill. App. 3d 752, 892 N.E.2d 78 (Ill. App. Ct. 2008) (finding predominance because "if plaintiffs establish that the time-rounding practice favors defendant and that defendant further implemented the early-in policy to take advantage of the time-rounding, then class members would be entitled to recover"); *Harrison v. Harry & David Operations, Inc.*, 1:18-CV-00410-CL, 2020 WL 8367533, at *9 (D. Or. Oct. 21, 2020), *R. & R. adopted,* No. 1:18-CV-00410-CL, 2021 WL 1135022 (D. Or. Mar. 24, 2021) (whether "rounding and attendance policies" combined to disfavor employees was predominant issue); *Mebane v. GKN Driveline*, No. 337 F.R.D. 479, 492 (M.D.N.C. 2020) (whether facially neutral 15-minute rounding policy

violated state law could be answered "with one stroke"); *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) (reversing class certification denial of rounding claim where district court erred in finding individual issues predominated).

In this case, the proposed class is sufficiently cohesive to warrant adjudication by representation because they were all subject to the same uniform policies and practices that give rise to Plaintiffs' claim for unpaid wages. The central question in this case is whether Defendant's rounding policy favors Defendant over time. Plaintiffs allege  that this question can be answered in one fell swoop for all Class Members using Defendant's pay records. Plaintiffs' expert analyzed the data and determined that 80% of the putative Class Members were allegedly underpaid as a result of Defendant's rounding policy and practice, when all clocked time is treated as work time. Stutheit Decl. ¶ 13. Similarly, each Class Member's settlement share will be calculated by looking at the same evidence—Defendant's pay records. *See* Settlement Agreement ¶¶ 23, 33(a). Predominance is therefore met.

### 2. Superiority

Superiority is established when class-wide litigation "will reduce litigation costs and promote greater efficiency" or when "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (internal citations omitted). Factors to consider include the class members' interests in individually controlling separate actions, other pending litigation concerning the controversy, the desirability of concentrating the litigation in the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

Class Members have little interest in pursuing their claims on an individual basis because individual recoveries are likely, if not certain, to be relatively small, which weighs in favor of certification. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001). Plaintiffs' expert calculated that the total lost work time because of rounding averaged out to 23 hours. Stutheit Decl. ¶ 13. Plaintiffs are aware of no other litigation concerning this controversy. Stutheit Decl. ¶ 15. The forum is desirable because the Plaintiff class comprises employees who

work (or worked) in Oregon, Third Am. Compl. ¶ 12, and Defendant operates hospitals, clinics, and other healthcare facilities in Oregon, *id.* at ¶ 2. Lastly, manageability is not a concern for settlement-only classes because "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. For these reasons, a class action is the superior method for fairly and efficiently adjudicating this controversy.

## II.    The Proposed Settlement Should Be Preliminarily Approved Because It Is Fair, Reasonable, and Adequate.

Class action settlements require court approval. Fed. R. Civ. P. 23(e). To obtain court approval, a proposed settlement must be fair, reasonable, and adequate, considering whether: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; the relief provided for the class is adequate; and the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D). In addition, class action settlements are subject to heightened scrutiny, which requires the court to examine the settlement for subtle signs of collusion using the *Bluetooth* factors. *E.g.*, *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The parties' proposed settlement in this case meets each of these standards.

### A.    The proposed Class Representatives and Class Counsel have adequately represented the class.

As discussed *supra*, in Section I(A)(4), the proposed Class Representatives and Class Counsel have adequately represented the class because (1) the interests of the Class Representatives, their counsel, and the Class are aligned; and (2) the Class Representatives and their counsel have vigorously prosecuted this case on behalf of the class. As discussed *infra*, in Section II(C)(1), the settlement Plaintiffs and their counsel negotiated provides significant relief for the class, further supporting the conclusion that their representation was more than adequate.

### B.    The proposed settlement was negotiated at arm's length.

The proposed settlement was negotiated at arm's length. The parties are both represented by counsel experienced in wage-and-hour and class-action litigation. Stutheit Decl. ¶ 9. The parties retained a neutral private mediator who has experience with class actions. *Id.* Before the

mediation, they separately and confidentially communicated both orally and in writing with the mediator to present the issues of the case and their respective claims or defenses. *Id.* They attended a day-long mediation on August 11, 2022. *Id.* Throughout the mediation, the mediator held private caucuses with each side. *Id.* Despite the parties' good faith efforts before and during mediation, they were unable to settle this action at mediation. *Id.* Negotiations continued with the mediator's assistance and concluded six months later with a mediator's proposal. *Id.*

### C.    The relief provided for the class is adequate.

To determine whether the relief provided for the class is adequate, the Court must take into account the following factors:

(i)     the costs, risks, and delay of trial and appeal;
(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)    any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). In this case, the proposed settlement is for $7,350,000. If the Court approves the settlement, Plaintiffs' counsel reasonably estimates the Net Settlement Fund will have approximately $5,400,000 for distribution among class members. The factors under Rule 23(e)(2)(C) all show that this relief is adequate.

### 1.    The relief is adequate considering the costs, risks, and delay of trial and appeal.

The relief to Class Members is adequate because if the case proceeds to trial, prosecuting the case will require incurring additional costs (cutting into the amount of relief that flows to Class Members), there is no guarantee that Plaintiffs will prevail at trial, and waiting for trial will delay payment by more than a year. Even if Plaintiffs prevail at trial, Defendant certainly would have exhausted all of its appeal options—compounding the costs, risks, and delay even further. Although Plaintiffs believe that the harm and violation of the Oregon state wage-and-hour laws are clear, this settlement provides for a quicker—and far more certain—recovery for Class Members than continuing to pursue uncertain litigation.

This relief to the class is more than adequate in a class action settlement, the "very essence" of which is "compromise, a yielding of absolutes and abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (internal citation omitted). Courts routinely approve class action settlements that yield far less. *See 7-Eleven Owners for Fair Franchising,* 85 Cal.App.4th 1135, 1150, 102 Cal Rptr. 2d 777 (2000) (noting that courts routinely approve settlements where the recovery for the class constitutes "only a fraction of the potential recovery.") (citing *Linney v. Cellular Alaskan Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998)); *In re Checking Account Overdraft Litig*., 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (finding that "standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *Newbridge Networks Sec. Litig*., 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (noting that "an agreement that secures roughly six to twelve percent of a potential trial recovery . . . seems to be within the targeted range of reasonableness").

This settlement is particularly fair in light of the Oregon Supreme Court's recent ruling in *Buero v. Amazon Servs.*, 370 Or. 502 (2022), which held for the first time that Oregon wage claims are governed by the federal Portal-to-Portal Act's definition of compensable time. The *Buero* court held that whether the time Amazon warehouse employees spent in post-shift security screenings was compensable turned on whether the activity was "integral and indispensible" to their principal work activities. *Id.* at 527. Some courts have denied class certification in rounding claims governed by the Portal-to-Portal Act. *See, e.g.*, *Harris v. Georgia-Pacific Wood Prods. LLC*, No. 1:22-CV-2530-TWT, 2023 U.S. Dist. LEXIS 49156, *1015 (N.D. Ga. Mar. 23, 2003). And at least one judge in this district has held that *Buero* affects the class certification analysis of a time rounding claim. *Makaneole v. SolarWorld Industries*, No. 3:14-cv-01528-JR, 2022 U.S. Dist. LEXIS 19181 (D. Or., Feb. 1, 2022). While Plaintiffs continue to believe they would most likely ultimately prevail on a contested certification motion, it would be irresponsible of them to ignore the risk created by *Buero* in assessing the reasonableness of the settlement.

The amount offered in settlement is more than adequate in light of these very real risks. Plaintiffs' expert calculated potential damages using Defendant's timeclock and pay records. Stutheit Decl. ¶ 13. He determined that employees would have earned an additional $9,998,655 in principal wages during the class period had Defendant not used timeclock rounding (treating all clocked time and worked time).[3] Stutheit Decl. ¶ 13. Counsel reasonably estimates that the NSF will have $5,400,000 to be distributed among class members. Stutheit Decl. ¶ 13. As a result, this settlement will pay class members approximately 54% of their allegedly lost wages. Further, the $5,400,000 of the NSF is significant, particularly when compared to other settlements in similar cases. For instance, Judge Mosman approved a pre-*Buero* settlement for approximately $2 million to more than 25,000 class members who were employees at Providence to resolve a claim for unpaid wages as a result of the defendant's rounding practices. Stutheit Decl. Ex. B & Ex. C. The settlement here is a significantly better deal for the class because it provides over twice as much money to be shared by less than *half* as many employees.

### 2. The proposed method of distributing relief to the class is effective.

As this proposal is for an opt-out class settlement, absent Class Members do not have to take any action to obtain relief. The Settlement Administrator will calculate each individual settlement payment proportionally based on the additional amount of wages that Class Member would have earned during the class period if they had been paid for the net amount of clocked-in time that rounded in Defendant's favor. Settlement Agreement ¶¶ 23, 33(a). If a Class Member's calculation was zero, their payment will be $25. *Id.* at ¶ 33(a).

The Settlement Administrator will mail individual settlement payments to Class Members who have not opted out. This method is effective because (1) using United States mail is authorized as a method for delivering Notice,[4] (2) Defendant—each Class Member's current or former employer—will provide the Settlement Administrator with each Class Member's last-

---

[3] Plaintiffs also had a claim for penalty wages. The Court's recent ruling in *Eisele v. Home Depot U.S.A., Inc.*, No. 3:20-cv-01740-HZ, 2022 U.S. Dist. LEXIS 216588, at *22–32 (D. Or. Nov, 29, 2022) significantly complicated Plaintiffs' entitlement to penalty wages.

[4] Fed. R. Civ. P. 23(c)(2)(B).

MOTION FOR PRELIMINARY APPROVAL                                    Page 20

known mailing address,[5] and (3) the Settlement Administrator will have used reasonable tracing to verify the accuracy of the addresses before mailing the Notice and reasonable diligence to obtain a current address for any Notices that were returned as undeliverable.[6]

Class Members will have 180 calendar days to cash their checks, after which the Settlement Administrator will remit the amounts associated with uncashed checks to Legal Aid Services of Oregon. Settlement Agreement ¶¶ 35, 47.

### 3. The relief to the class is adequate considering the terms of the proposed award of attorney's fees, including the timing of payment.

Plaintiffs' counsel will seek attorneys' fees not to exceed 25% of the common fund through a separate motion. Their request is subject to Court approval and objections from class members. Fed. R. Civ. P. 23(h). Class Counsel will not be paid unless and until the Court approves their request. Settlement Agreement ¶ 32(a). If the Court approves their request, Class Counsel won't be paid until after the Court enters final judgment. *Id.* at ¶¶ 22, 34. This is the same timeframe that class members will receive their individual settlement payments. *Id.*

### 4. No other agreements exist in connection with the proposal.

Neither the parties nor their respective counsel have made any agreements in connection with this proposal other than those contained in the settlement agreement. Stutheit Decl. ¶ 16; *see also* Settlement Agreement ¶ 69 (integration clause stating that the settlement contains the entire agreement between the parties).

### D. The proposed settlement treats Class Members equitably.

The proposed settlement treats Class Members equitably relative to each other because their individual recovery is in proportion to the amount of time they were clocked in but not paid for under Defendant's rounding policy. *See* Settlement Agreement ¶¶ 23, 33(a) (describing individual payment calculations); *see also Kang v. Fyson*, No. 22-15694, 2022 U.S. App. LEXIS

---

[5] Settlement Agreement ¶ 36.
[6] Settlement Agreement ¶ 38

28358, at *7 (9th Cir. Oct. 12, 2022) (affirming the district court's approval of a pro rata calculation based on the number of shifts worked to allocate damages). This is a more equitable approach than providing the same amount to each class member because it will result in class members who were harmed more (i.e., had more unpaid wages) receiving a greater slice of the pie. Class members who were not clocked in for more hours than they were paid under the rounding policy will still receive $25 in consideration of their release of claims. Settlement Agreement ¶ 33(a).

E.    **The proposed settlement passes scrutiny under the *Bluetooth* factors.**

When considering a motion for preliminary approval of a class action settlement, the Court must apply the *Bluetooth* factors to "smoke out potential collusion." *E.g.*, *Briseño*, 998 F.3d at 1023. The *Bluetooth* factors are: class counsel receiving a disproportionate share of the settlement; a "clear sailing" agreement where class counsel's fees are provided separately from class funds; and a reverter provision where fees not awarded revert to defendants rather than to the class fund. *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011).

1.    **The proposed attorney fee award is not a disproportionate share of the settlement.**

"[C]ourts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Briseño*, 998 F.3d at 1024 (internal quotations omitted). This is because of the incentive for class counsel to "conspire with the defendant to reduce compensation for class members in exchange for a larger fee." *Id.* at 1025. In *Briseño*, the Ninth Circuit noted that the attorney fee award of almost $7 million was grossly disproportionate to the "relative scraps" of what the class would receive—less than a million dollars. *Id.* at 1026. In contrast, here, the proposed fee award will be no more than the Ninth Circuit's "benchmark" of 25% of the common fund, which equates to $1,837,500.

Settlement Agreement ¶ 32(a); *see, e.g.*, *In re Bluetooth*, 654 F.3d at 942 (stating that courts typically calculate 25% of the common fund as the benchmark for a reasonable fee award). After deductions for costs and expenses, Plaintiffs' counsel reasonably estimates that the amount to be divided among class members will be approximately $5,400,000. Stutheit Decl. ¶ 12. Thus, the vast majority of the monies from the proposed settlement flow to class members—not to Class Counsel.

### 2.   The existence of a "clear sailing" agreement

Although a clear sailing agreement is not a "death knell" to approval of a class action settlement, the Court must "scrutinize the agreement for signs that the fees requested by counsel are unreasonably high." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610–11 (9th Cir. 2021) (internal citation and quotation marks omitted). Although the proposed settlement agreement has a type of clear sailing provision,[7] the fee request is reasonable.

First, a request for attorneys' fees of 25% of the common fund is considered the benchmark in the Ninth Circuit. *E.g.*, *In re Bluetooth*, 654 F.3d at 942. Second, the fee request is for a percentage of the common fund, rather than an award separate from the class funds. As a result, the interests of Plaintiffs' counsel and Class Members are aligned—they both want to maximize the gross settlement amount. Thus, Plaintiffs' counsel has not infected the negotiations with their own self-interest at the expense of the class. *See, e.g.*, *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019) (describing the court's obligation to scrutinize the settlement for signs that class counsel have allowed pursuit of their own self-interests to infect negotiations). Moreover, Defendant's interest—*minimizing* the gross settlement amount—was directly opposed

---

[7] *See* Settlement Agreement ¶ 32(a) (Defendant agrees not to oppose Plaintiffs' request for attorneys' fees in the amount of 25% of the gross settlement amount).

to the interest that class members and Plaintiffs' counsel share to *maximize* the common fund,

thereby negating any implication of collusion. Last, neither of the other *Bluetooth* factors

(disproportionate share, *supra*, and a reverter provision, *infra*) are present.

### 3. The settlement agreement does not have a reverter.

The settlement agreement does not include a reverter that returns unclaimed or

unawarded monies to Defendant. As explained in the proposed Notice, any amounts of attorneys'

fees or costs that the Court does not approve will be added to the net settlement fund and

distributed to class members who don't opt out. Ex. A ¶ 4(d). Monies from uncashed checks will

go to Legal Aid Services of Oregon.[8] Settlement Agreement ¶ 35. The lack of a reverter further

negates collusion.

## III. The Proposed Class Notice Should Be Approved.

Approval of the Class Notice encompasses both the plan to provide notice and the proposed

Notice itself.

### A. The notice plan will provide the best notice practicable under the circumstances.

If the parties show that the Court will likely be able to approve the proposed settlement

and certify the class, the Court "must direct notice in a reasonable manner to all class members

who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For a class proceeding under

Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under

---

[8] Legal Aid Services of Oregon (LASO) satisfies the "next best" test under the *cy pres* doctrine because LASO assists Oregonians with claims for unpaid wages, which is the Class Members' claim here. *Accord Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (holding that *cy pres* distribution must be guided by the objectives of the underlying statute and the interests of the silent class members).

the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be by United States mail. *Id.*

Under the proposed settlement, Defendant will send the Settlement Administrator the

names and last-known address of each Class Member. Settlement Agreement ¶ 36. The

Settlement Administrator will use reasonable tracing to verify the accuracy of the addresses

before the initial mailing to ensure Class Members promptly receive the Notice. *Id.* at ¶ 38. The

Settlement Administrator will send the Notice to all Class Members by first class mail as soon as

reasonably practicable under the circumstances and within 30 days of the Court granting

preliminary approval. Settlement Agreement ¶ 37. For any envelopes returned as undeliverable,

the Settlement Administrator will use reasonable diligence to obtain a current address and re-

mail the envelope to that address. *Id.* at ¶ 38. The proposed plan thus provides the best notice that

is practicable under the circumstances and includes individual notice to all members who can be

identified through reasonable effort.

**B.    The Notice contains each element of Rule 23(c)(2)(B) clearly and concisely in plain, easily understood language.**

"The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

The proposed Notice, attached as Exhibit A, contains each of these requirements in plain,

easily understood language in a clear and concise manner. *See* Settlement Agreement Ex. A.

**IV.    Plaintiffs Should Be Appointed as Class Representatives and Plaintiffs' Attorneys Should Be Appointed as Class Counsel.**

Certifying a class generally requires appointment of class counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the Court must consider:

(i)     the work counsel has done in identifying or investigating potential claims in the action;

(ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

All four of these considerations weigh in favor of appointing Plaintiffs' attorneys as class counsel. First, Plaintiffs' attorneys have done extensive work identifying and investigating potential claims in this case. They litigated a rounding claim against Defendant under Washington law to the eve of trial, settling after extensive discovery (more than 32,000 pages of discovery documents), multiple summary judgment motions, and a motion to the Washington Court of Appeals for discretionary review of the certification of the class in that case. Stutheit Decl. ¶ 8. Based in part on the discovery conducted in that case, Plaintiffs' counsel concluded that Defendant's rounding policy and practice also violated Oregon law, which led to their investigation in Oregon and representation of Plaintiffs. *Id.* Since filing the complaint in this case, Plaintiffs' counsel have continually evaluated additional potential claims as well as the strength of the claim brought through discovery and legal research and analysis as well as by reviewing data analysis by an expert. *Id.*

Plaintiffs' attorneys have extensive experience handling class actions, complex litigation, and wage-and-hour claims. Stutheit Decl. ¶¶ 3–4. This experience has garnered Plaintiffs' attorneys with a robust knowledge of Oregon's wage and hour laws and the procedural law applicable to class actions. *Id.* Lastly, Plaintiffs' counsel has already committed significant resources to representing the class and will continue to do so. Stutheit Decl. ¶¶ 5, 11.

Further, Tracy Davies and Ashley DeWitt should be appointed as Class Representatives because they are adequate to so serve, as explained above, *supra* Section I(A)(4).

V.    **Request for Stay on New Actions Covered by the Settlement**

The parties request that the Court's preliminary approval order enjoin participating Class Members from instituting future actions that would be covered by the settlement during the pendency of the notice and opt-out period.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this motion for preliminary approval and enter an order (1) provisionally certifying the class for settlement purposes; (2) appointing Plaintiffs as Class Representatives; (3) appointing Plaintiffs' attorneys as Class Counsel; (4) approving the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; (5) appointing JND Legal Administration as Settlement Administrator to administer the settlement; and (6) scheduling a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement and in this motion.

DATED this 1st day of May 2023.

STUTHEIT KALIN LLC
By: */s/ Peter Stutheit*
    Peter Stutheit, OSB No. 061248
    peter@stutheitkalin.com
    Kyann Kalin, OSB No. 060754
    kyann@stutheitkalin.com
    Phone:  (503) 493-7488
    Fax:      (503) 715-5670

HKM EMPLOYMENT ATTORNEYS LLP
    Jason A. Rittereiser, OSB No. 211298
    jrittereiser@hkm.com
    Phone:  (206) 838-2504

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing **PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

> Timothy W. Snider, OSB No. 034577
> timothy.snider@stoel.com
> Melissa J. Healy, OSB No. 102176
> melissa.healy@stoel.com
> Anthony Blake, OSB No. 163446
> anthony.blake@stoel.com
> STOEL RIVES LLP
> 760 SW Ninth Avenue, Suite 3000
> Portland, OR 97205
> Telephone: 503.224.3380
> Facsimile: 503.220.2480
>
> *Attorneys for Defendant*

**DATED:** May 1, 2023.

> */s/ Klarisse Leonor*
> Klarisse Leonor, Paralegal
> **HKM EMPLOYMENT ATTORNEYS LLP**

Page 1 – CERTIFICATE OF SERVICE
(6:21-cv-00825-AA)
119374712.1 0065738-00053