Peter Stutheit, OSB No. 061248
peter@stutheitkalin.com
Kyann Kalin, OSB No. 060754
kyann@stutheitkalin.com
STUTHEIT KALIN LLC
208 SW 1st Avenue, Suite 260
Portland, OR 97204
503.493.7488

Jason Rittereiser, OSB No. 211298
jrittereiser@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
206.838.2504

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TRACY DAVIES and ASHLEY DEWITT, individually and on behalf of all others similarly situated, | Case No.: 6:21-cv-00825-AA |
| Plaintiffs, | |
| v. | PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| PEACEHEALTH | |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... 2

LR 7-1 CERTIFICATION ...................................................................................... 6

MOTION.................................................................................................................. 6

I. INTRODUCTION ............................................................................................... 7

II. FACTS AND PROCEDURAL HISTORY .......................................................... 7

III. THE SETTLEMENT ......................................................................................... 8

    A. Class Definition ....................... ………………………………………..…8

    B. Settlement Benefts ........................ ………………………………………..…8

    C. Attorneys' Fees, Litigation Costs, and Class Representative Award……………………..9

    D. Release and Waiver of Claims....................... ………………………………..…9

    E. Settlement Procedures Following the Court's Preliminary Approval Order……………...9

IV. AUTHORITY AND ARGUMENT.................................................................... 10

    A. The Class Meets the Requirements for Certification……………………………....10

        1. The proposed Class Satisfies Rule 23(a) ............................................. 11

            a. Numerosity ........................................................................... 11

            b. Commonality ....................................................................... 11

            c. Typicality.............................................................................. 12

            d. Adequacy ............................................................................. 12

        2. The proposed Class Satisfies Rule 23(b) ............................................. 13

            a. Predominance ....................................................................... 13

            b. Superiority ............................................................................ 14

    B. The Proposed Settlement Should be Approved Because It Is Fair, Reasonable, and Adequate ............................................................................................. 15

        1. The proposed Class Representatives and Class Counsel have adequately represented the class............................................................. 16

        2. The proposed settlement was negotiated at arm's length ...................... 16

        3. The relief provided for the class is adequate ........................................ 16

            a. The relief is adequate considered the costs, risks, and delay of trial and appeal ................................................................................. 17

            b. The proposed method of distributing relief to the class is effective .............. 19

            c. The relief to the class is adequate considering the terms of the proposed award of attorneys' fees including the timing of the payment.................................... 20

d. No other agreements exist in connection with the proposal..........................20

4. The proposed settlement treats Class Members equitably......................................20

5. The proposed settlement passes scrutiny under the *Bluetooth* factors....................21

    a. The proposed attorney fee award is not a disproportionate share of the settlement...................................................................................................................21

    b. The existence of a "clear sailing" agreement ...................................................21

    c. The settlement agreement does not have a reverter.........................................22

C. The Court-Approved Class Notice Has been Sent, Fulfilling the Requirements of FRCP 23(c)(2)(B) and Due Process. ................................................................................................23

D. The Objections Should Be Overruled Because the Settlement Is Fair, Reasonable, and Adequate, Which Is Further Evidenced by the Small Opt-Out Percentage...........................23

1. The objections should be overruled......................................................................24

2. The extremely low percentage of opt-outs shows that the settlement is fair, reasonable, and adequate. ........................................................................................25

E. JND's Costs to Adminster the Settlement Should be Approved .......................................25

CONCLUSION......................................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1135, 102 Cal Rptr. 2d 777 (2000)..................................................................................................17

*Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ...........................10, 13, 15

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) .....................................10, 23

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)....................................................15, 21,

*Eisele v. Home Depot U.S.A., Inc.*, No. 3:20-cv-01740-HZ, 2022 U.S. Dist. LEXIS 216588 (D. Or. Nov, 29, 2022) ..................................................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..........................................12, 23, 25

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)...................................................12

*Harrison v, Harry & David Operations*, No. 1:18-cv-00410-CL, 2020 U.S. Dist. LEXIS 249313, 2020 WL 8367533 (D. Or. Oct. 21, 2020) .................................13

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................17

*J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256 (D. Or., Feb. 5, 2021)..........................................11

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935 (9th Cir. 2011).........................................................................................21, 22

*Kang v. Fyson*, No. 22-15694, 2022 U.S. App. LEXIS 28358 (9th Cir. Oct. 12, 2022) .................................................................................................................20

*Linney v. Cellular Alaskan Partnership*, 151 F.3d 1234 (9th Cir. 1998) ...............................17

*McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) ...............................................21

Newbridge Networks Sec. Litig., 1998 WL 765724 (D.D.C. Oct. 23, 1998)..........................17

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615 (9th Cir. 1982) .............................17

*Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019)....................................................22

*Russell v. Ray Klein, Inc.*, No. 1:19-cv-00001-MC, 2022 U.S. Dist. LEXIS 92881, 2022 WL 1639560 (D. Or. May 24, 2022) .........................................................10

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)............................................14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541 (2011) .................................11

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ....................................15

**Rules**

Fed. R. Civ. P. 23(a)(1) ..........................................................................................11

Fed. R. Civ. P. 23(a)(2) ..........................................................................................11

Fed. R. Civ. P. 23(a)(3) ..........................................................................................12

Fed. R. Civ. P. 23(a)(4) ..........................................................................................12

Fed. R. Civ. P. 23(b)(3) ......................................................................................13, 15

Fed. R. Civ. P. 23(b)(3)(A)–(D) ...............................................................................15

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................19, 23

Fed. R. Civ. P. 23(e) ........................................................................10, 15, 16, 17, 23

Fed. R. Civ. P. 23(e)(2)(A)–(D) ...............................................................................15

Fed. R. Civ. P. 23(e)(2)(C) ......................................................................................17

**LR 7-1 CERTIFICATION**

Defendant, PeaceHealth, does not oppose this motion.

**MOTION**

Plaintiffs Tracy Davies and Ashley DeWitt, the Court-appointed Class Representatives, respectfully move the Court for an order:

1. Granting final approval of the parties' Settlement Agreement;

2. Certifying the class for settlement purposes;

3. Overruling the objections to the settlement;

4. Excluding Class Members who timely requested to be excluded;

5. Directing Defendant to pay the settlement amount of $7,350,000 into a common fund held by JND Legal Administration LLC (JND) in trust;

6. Awarding Class Counsel's attorneys' fees in the amount of $1,837,500 and costs in the amount of $24,653.63–$26,653.63, as requested in Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs;

7. Awarding Representative Plaintiff Tracy Davies a service award in the amount of $7,500;

8. Awarding Representative Plaintiff Ashley DeWitt a service award in the amount of $7,500;

9. Awarding the costs and expenses of the Settlement Administrator, JND in the amount of $65,000; and

10. Directing JND to distribute all funds or amounts pursuant to the Settlement Agreement or by court order, including payments to Class Members, Representative Plaintiffs, and Class Counsel.

11. Dismissing this case.

In support of this motion, Plaintiffs submit the following memorandum and the declarations of Peter Stutheit and Heather D. LaPollo.

# I.    INTRODUCTION

Since this Court's order preliminarily approving the proposed settlement agreement, Plaintiffs and PeaceHealth worked in conjunction with JND to provide Class Notice to the 11,353 Class Members. To date, there have been 36 total opt-out requests and 2 objections, neither of which has merit. Plaintiffs now seek final approval of this class action settlement.

# II.    FACTS AND PROCEDURAL HISTORY

This is a putative class action to recover unpaid wages. Plaintiffs worked as hourly employees at PeaceHealth's hospitals in Oregon. They allege that PeaceHealth fails to pay hourly employees at PeaceHealth's hospitals in Oregon for all compensable hours as a result of its timeclock rounding policy. Third Am. Class Action Compl. ¶¶ 6–25, ECF No. 11. In particular, Plaintiffs allege that PeaceHealth's time-keeping system rounds employees' time punches to the nearest quarter hour. *Id.* at ¶¶ 4–5. For instance, where an employee punches in for work at 7:53, the timekeeping system records the start time for pay purposes as 8:00, denying the employee pay for the first seven minutes of their clocked time. Were an employee to punch out at the end of their shift at, say, 5:07, the timekeeping system would record their end time for pay purposes as 5:00, again denying the employee for the final seven minutes of their shift. The converse is also true: were an employee to punch in at 8:07, their start time would be recorded as 8:00 and they would be paid for 7 minutes that they didn't actually work. *Id.* at 4-5. Thus, it is possible for employees to gain or lose time under the system depending on when they punch in. Plaintiffs allege that in aggregate, PeaceHealth employees are systematically denied regular and overtime pay for all hours worked under PeaceHealth's rounding system because as a group they tend to punch disproportionately during the time periods that benefit PeaceHealth. *Id.* at ¶¶ 7–10. PeaceHealth has consistently denied all allegations of wrongdoing. *See, e.g.*, Answer to Third Am. Class Action Compl., ECF No. 12.

On August 11, 2022, the parties participated in a full-day, private, arm's-length mediation before Eric O. English of Resolution Strategies LLP. Mr. English is an experienced class action

mediator with extensive knowledge of Oregon's wage and hour laws. Stutheit Decl. ¶ 4. The parties were unable to settle at the mediation. They continued negotiating with Mr. English's assistance and eventually, through a mediator's proposal, reached agreement on the material terms of a settlement on February 17, 2023. *Id*. The parties executed a long-form agreement containing all the terms of the settlement in April 2023. Stutheit Decl. Ex. A ("Settlement Agreement").

### III.     THE SETTLEMENT

Plaintiffs offer the following summary of the terms of the proposed settlement.

**A.     Class Definition**

For settlement purposes, the proposed "Class" means all hourly, non-exempt PeaceHealth employees who worked in the State of Oregon at any time within the period of April 20, 2015 to April 1, 2023.

**B.     Settlement Benefits**

For the benefit of all Class Members, Defendants will pay a total, all-in settlement amount of $7,350,000.00 into a settlement fund ("Gross Settlement Amount"). This amount will be used to satisfy the following: (1) any class representative service award to Plaintiffs the Court approves; (2) an award of attorneys' fees to Class Counsel that does not exceed 25% of the Gross Settlement Amount ($1,837,500), plus actual litigation costs approved by the Court; and (3) payment of settlement administrator fees and expenses estimated to be $65,000. The amount remaining after deductions for these payments is the Net Settlement Fund ("NSF"), which will be used to pay participating Class Members. Settlement Agreement ¶¶ 32–33.

The NSF will be distributed fairly to participating Class Members based on the degree to which PeaceHealth's practices allegedly harmed them. Each Class Member's payment ("individual settlement payment") will be calculated proportionally based on the amount of wages they would have been paid for the net amount of clocked-in time that rounded in PeaceHealth's favor under the timeclock rounding policy. Settlement Agreement ¶ 33(a). Class

Members who were not clocked in for more time than they were paid under PeaceHealth's rounding policy will receive a payment of $25 in exchange for their release of claims. Settlement Agreement ¶ 33(a).

The payments to each class member will be characterized as 40% "wages" from which mandatory withholdings will be deducted (including the employer's share of payroll taxes) and 60% non-wages from which no withholdings will be deducted. Settlement Agreement ¶ 33(b). The amount of each individual settlement payment depends on a number of factors, including the amount of attorneys' fees and costs awarded by the Court, the costs of claims administration, the number of Class Members who decide to exclude themselves from the settlement, and each Class Member's number of shifts worked and clocking behavior.

## C.    Attorneys' Fees, Litigation Costs, and Class Representative Award

The Settlement Agreement authorizes Plaintiffs to request attorneys' fees to Class Counsel in an amount that does not exceed 25% of the Gross Settlement Fund, plus actual litigation costs and class representative service awards of $7,500, which Defendant will not oppose. Settlement Agreement ¶ 32(a)–(b). Plaintiffs have done so through a separate motion, requesting an award of reasonable attorneys' fees in the amount of $1,837,500, litigation costs of $24,653.63 to $26,653.63, and service awards of $7,500 to each Representative Plaintiff. ECF No. 23.

## D.    Release and Waiver of Claims

In exchange for the benefits provided under the settlement, Class Members who do not opt out will irrevocably release any and all wage and hour claims that were, or could have been, asserted in this Action based on the facts and legal theories alleged. Settlement Agreement ¶¶ 45, 49.

## E.    Settlement Procedures Following the Court's Preliminary Approval Order

The Court preliminarily approved the settlement agreement and Class Notice on July 17, 2023. ECF No. 21. The parties, in conjunction with JND, coordinated to implement the notice plan as follows: JND was provided a list of class members' names and mailing addresses and

updated those mailing addresses using the National Change of Address database. LaPollo Decl. ¶¶ 3–4. On August 14, 2023, JND mailed the Court-approved Class Notice via USPS first class mail to each Class Member. *Id.* at ¶ 5. JND received 73 Class Notices that were returned by the USPS as undeliverable without a forwarding address and, through skip-tracing, was able to remail 47 Class Notices to updated addresses. *Id.* at ¶¶ 6–7. These efforts resulted in 99.8% (11,327 out of 11,353) of the Class Notices being deemed delivered. *Id.* at ¶¶ 8–9.

Of the 11,327 Class Members who presumptively received the Class Notice, only two Class Members objected, *id.* at ¶ 11, and 36 opted out, *id.* at ¶ 14. JND also received two late opt-out requests. LaPollo Decl. ¶ 15.

## IV.    AUTHORITY AND ARGUMENT

Class action settlements require court approval. Fed. R. Civ. P. 23(e). On final approval, the Court must determine if the proposed class satisfies the class certification requirements in Rule 23(a)–(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 613–14, 117 S. Ct. 2231 (1997) (describing class-action prerequisites). If certification requirements are satisfied and, after a final hearing where Class Members have the opportunity to raise objections, the Court assesses the settlement to determine if it is "fair, reasonable, and adequate" under Rule 23(e). If so, the Court finally approves the settlement. *E.g.*, *Russell v. Ray Klein, Inc.*, No. 1:19-cv-00001-MC, 2022 U.S. Dist. LEXIS 92881, 2022 WL 1639560, at *4 (D. Or. May 24, 2022).

## A.    The Class Meets the Requirements for Certification.

Whether a class can be certified requires a two-prong approach. *Russell*, 2022 U.S. Dist. LEXIS 92881, at *5. The first prong is that the class meets the four requirements of Rule 23(a).[1] *Id.* at *5–6. The second prong is that the class falls into one of three class action categories under Rule 23(b). *Id.* at *5.

---

[1] The Ninth Circuit has declined to adopt the implicit  requirement of "ascertainability."*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017)Even if "ascertainability" was required, absent Class Members are readily identifiable through Defendant's records.

1.      **The proposed class satisfies Rule 23(a).**

Rule 23(a), the first prong, has four prerequisites to class certification: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). The proposed class here meets each of these requirements.

### a.   Numerosity

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As a "rough rule of thumb" Oregon district courts use a threshold of 40 class members as sufficient to meet the numerosity requirement. *E.g.*, *J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or., Feb. 5, 2021). In this case, the class consists of 11,353 members. LaPollo Decl. ¶ 3. Numerosity is therefore met.

### b.   Commonality

Commonality requires that the class has common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This means that the class members need to have suffered the same injury and their claim depends on a common contention, the "determination of its truth or falsity [must be able to] resolve an issue that is central to the validity of [each claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541 (2011).

Here, the Class Members have allegedly suffered the same injury: unpaid wages due to PeaceHealth's uniform timeclock rounding policy to which all Class Members were subject. Third Am. Compl. ¶¶ 15, 18, 21, 24. Their claim for unpaid wages, in all its forms (regular, overtime, and penalty), depends on a common contention: Defendant's policies and practices of rounding employee time systematically undercompensated employees for time worked. *Id.* at ¶ 10. Determining whether that common contention is true can be resolved in one stroke: under Plaintiffs' theory, compensability looks solely at the employer's policies and practices and an analysis of how these policies and practices affected the class as a whole. *Id.* at ¶¶ 3–10. Thus, commonality is met.

//

//

### c. Typicality

To be certified as a class, either the claims or defenses of the representative parties must be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotations removed).

Plaintiffs' claim stems from the same course of conduct—Defendant's timeclock rounding—that forms the basis of the class claims. Plaintiffs and Class Members' claims are based on the same facts and legal theories, namely: all were hourly, non-exempt employees of Defendant in Oregon during the class period, who were entitled under Oregon law to be paid for hours worked and were subject to Defendant's time clock rounding policies and practices. These rounding policies and practices allegedly systematically deprived Plaintiffs and Class Members of pay for hours worked. Finally, Oregon wage and hour statutes provide for the damages sought by Plaintiffs and Class Members. The Representative Plaintiffs meet the typicality requirement.

### d. Adequacy

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), which is resolved by two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

This case has no conflicts of interest between Class Members and the named plaintiffs or their counsel. Stutheit Decl. ¶ 9. Plaintiffs have the same claims as other Class Members— unpaid wages—which are based on the same practice and course of conduct by Defendant. As discussed below, pursuant to the proposed settlement, each individual settlement payment will be calculated using the same formula for injuries that occurred within the same time period for

Plaintiffs and each individual Class Member. Accordingly, Plaintiffs, their counsel, and Class Members' interests are all aligned, rather than in conflict.

Plaintiffs have demonstrated their commitment to this case by hiring experienced counsel, responding to written discovery requests, and producing documents. Stutheit Decl. ¶ 9. Plaintiffs' counsel are experienced in handling wage-and-hour class actions and have already devoted substantial time and resources to investigating the Class Members' claims and, for the past two years, prosecuting this case. Stutheit Decl. ¶¶ 3–5. Moreover, they have extensive experience with Defendant's timeclock rounding policy and practice, having recently and heavily litigated the precise rounding claim in Washington against Defendant up to the eve of trial. Stutheit Decl. ¶ 3. Adequacy is met.

### 2.    The proposed class satisfies Rule 23(b).

Rule 23(b)(3) requires "that the questions of law or fact common to class members **predominate** over any questions affecting only individual members, and that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3) (emphasis added).

### a.    Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The Ninth Circuit has emphasized that common employment policies and practices are frequently central to the predominancy analysis, and where such policies are present, predominance is rarely defeated." *Harrison v, Harry & David Operations*, No. 1:18-cv-00410-CL, 2020 U.S. Dist. LEXIS 249313, *25, 2020 WL 8367533 (D. Or. Oct. 21, 2020) (certifying wage claim based on timeclock rounding) (internal citation and quotation marks omitted). Accordingly, federal district courts regularly certify rounding cases just like this one. *See, e.g.*, *Harrison v. Harry & David Operations, Inc.*, 1:18-CV-00410-CL, 2020 WL 8367533, at *9 (D. Or. Oct. 21, 2020) (whether "rounding and attendance policies" combined to disfavor employees was predominant issue); *Leyva v. Medline*

*Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) (reversing class certification denial of rounding claim where district court erred in finding individual issues predominated); *Mendez v. R±L Carriers, Inc.*, C 11-2478 CW, 2012 WL 5868973, at *17 (N.D. Cal. Nov. 19, 2012) (certifying rounding class of hourly drivers based at multiple different terminals across California); *McClean v. Health Sys., Inc.*, 11-03037-CV-S-DGK, 2012 WL 607217, at *4 (W.D. Mo. Feb. 23, 2012) (finding predominance in claim involving 3,500 healthcare workers across sixty facilities because "policies are uniform" and defendant's "own records would provide the necessary evidence to establish a *prima facie* case that Defendant engages in unlawful rounding away of work time"); *Mebane v. GKN Driveline*, No. 337 F.R.D. 479, 492 (M.D.N.C. 2020) (whether facially neutral 15-minute rounding policy violated state law could be answered "with one stroke").

In this case, the proposed class is sufficiently cohesive to warrant adjudication by representation because they were all subject to the same uniform policies and practices that give rise to Plaintiffs' claim for unpaid wages. The central question in this case is whether Defendant's rounding policy favors Defendant over time. That question can be answered in one fell swoop for all Class Members using Defendant's punch and pay records. Similarly, each Class Member's settlement share will be calculated by looking at the same evidence— Defendant's punch and pay records. *See* Settlement Agreement ¶¶ 23, 33(a). Predominance is therefore met.

### b. Superiority

Superiority is established when class-wide litigation "will reduce litigation costs and promote greater efficiency" or when "no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) (internal citations omitted). Factors to consider include the class members' interests in individually controlling separate actions, other pending litigation concerning the controversy, the desirability of concentrating the litigation in

the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P.

23(b)(3)(A)–(D).

Class Members have little interest in pursuing their rounding claims on an individual

basis because individual recoveries are likely to be relatively small, which weighs in favor of

certification. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

Plaintiffs' expert calculated that the total lost work time because of rounding averaged out to 23

hours per employee. Stutheit Decl. ¶ 7. Plaintiffs are aware of no other litigation concerning this

controversy. Stutheit Decl. ¶ 10. The forum is desirable because the class comprises employees

who work (or worked) in Oregon (Third Am. Compl. ¶ 12) and Defendant operates hospitals,

clinics, and other healthcare facilities in Oregon. *Id.* at ¶ 2. Lastly, manageability is not a concern

for settlement-only classes because "the proposal is that there be no trial." *Amchem*, 521 U.S. at

620. For these reasons, a class action is the superior method for fairly and efficiently

adjudicating this controversy.

**B.    The Proposed Settlement Should Be Approved Because It Is Fair, Reasonable, and Adequate.**

To obtain final court approval, a proposed class action settlement must be fair,

reasonable, and adequate. Courts consider the following factors in making this determination: (1)

whether the class representatives and class counsel adequately represented the class; (2) whether

the proposal was negotiated at arm's length; (3) whether the relief provided for the class is

adequate; and (4) whether the settlement treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). In addition, class action settlements are subject to heightened

scrutiny, which requires the court to examine the settlement for subtle signs of collusion using

the *Bluetooth* factors. *E.g.*, *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The

parties' proposed settlement in this case meets each of these standards.

//

//

1.      **The proposed Class Representatives and Class Counsel have adequately represented the class.**

As discussed *supra*, in Section I(A)(4), the proposed Class Representatives and Class Counsel have adequately represented the class because (1) the interests of the Class Representatives, their counsel, and the Class are aligned; and (2) the Class Representatives and their counsel have vigorously prosecuted this case on behalf of the class. As discussed *infra*, in Section II(C)(1), the settlement Plaintiffs and their counsel negotiated provides significant relief for the class, further supporting the conclusion that their representation was more than adequate.

2.      **The proposed settlement was negotiated at arm's length.**

The proposed settlement was negotiated at arm's length. The parties are both represented by counsel experienced in wage-and-hour and class-action litigation. Stutheit Decl. ¶¶ 3, 5. Plaintiffs obtained the information necessary to evaluate the value of settlement, including pay and punch records and retained an expert to analyze data and compute damages. Stutheit Decl. ¶¶ 3, 7. After Plaintiffs and Class Counsel had sufficient information to assess the viability and value of the case, the parties retained a neutral private mediator who has experience with class actions. *Id.* at ¶¶ 3–4. The parties attended a day-long mediation on August 11, 2022. *Id.* Despite the parties' good faith efforts before and during mediation, they were unable to settle this action at mediation. *Id.* Negotiations continued with the mediator's assistance, and they were only able to resolve the case after six additional months of negotiation with the assistance of the mediator and a mediator's proposal. *Id.*

3.      **The relief provided for the class is adequate.**

To determine whether the relief provided for the class is adequate, the Court must take into account the following factors:

(i)      the costs, risks, and delay of trial and appeal;
(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)     any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). In this case, the proposed settlement is for $7,350,000. If the Court

approves the settlement, Plaintiffs' counsel reasonably estimates the Net Settlement Fund will

have approximately $5,400,000 for distribution among class members. The factors under Rule

23(e)(2)(C) all support the conclusion that this relief is adequate.

### a. The relief is adequate considering the costs, risks, and delay of trial and appeal.

The relief to Class Members is adequate because if the case proceeds to trial, prosecuting

the case will require incurring additional costs (cutting into the amount of relief that flows to

Class Members), there is no guarantee that Plaintiffs will prevail at trial, and waiting for trial will

delay payment by more than a year. Stutheit Decl. ¶ 6. Even if Plaintiffs prevailed at trial,

Defendant would, in all likelihood, have exhausted all of its appeal options—compounding the

costs, risks, and delay even further. Although Plaintiffs believe that the harm and violation of the

Oregon state wage-and-hour laws are clear, this settlement provides for a quicker—and far more

certain—recovery for Class Members than continuing to pursue uncertain litigation.

The relief to the class provided by this settlement (approximately 54% of the total wage

loss) is more than adequate in a class action settlement, the "very essence" of which is

"compromise, a yielding of absolutes and abandoning of highest hopes." *Officers for Justice v.*

*Civil Serv. Comm'n,* 688 F.2d 615, 624 (9th Cir. 1982) (internal citation omitted). Courts

routinely approve class action settlements that yield "only a fraction of the potential recovery."

*See 7-Eleven Owners for Fair Franchising,* 85 Cal.App.4th 1135, 1150, 102 Cal Rptr. 2d 777

(2000) (citing *Linney v. Cellular Alaskan Partnership,* 151 F.3d 1234, 1242 (9th Cir. 1998)).

Indeed, "standing alone, nine percent or higher constitutes a fair settlement even absent the risks

associated with prosecuting these claims." *In re Checking Account Overdraft Litig*., 830 F. Supp.

2d 1330, 1346 (S.D. Fla. 2011); *Newbridge Networks Sec. Litig*., 1998 WL 765724, at *2

(D.D.C. Oct. 23, 1998) (noting that "an agreement that secures roughly six to twelve percent of a

potential trial recovery . . . seems to be within the targeted range of reasonableness").

Here, Plaintiffs' expert calculated potential damages using Defendant's timeclock and pay records. Stutheit Decl. ¶ 7. He determined that employees would have earned an additional $9,998,655 in principal wages during the class period had Defendant not used timeclock rounding.[2] *Id.* Counsel reasonably estimates that the NSF will have $5,400,000 to be distributed among class members. *Id.* As a result, this settlement will pay class members approximately 54% of their allegedly lost wages. Further, this outcome is significant, particularly when compared to other settlements in similar cases. For instance, in 2015, Judge Mosman approved a pre-*Buero* settlement for approximately $2 million to more than 25,000 class members who were employees at Providence to resolve a claim for unpaid wages as a result of the defendant's rounding practices. Stutheit Decl. Ex. B & C. The settlement here provides over twice as much money to be shared by fewer than *half* as many employees.

This settlement is particularly fair in light of the risks created by recent court decisions. First, the Oregon Supreme Court's recent ruling in *Buero v. Amazon Servs.*, 370 Or. 502 (2022) held—for the first time—that Oregon wage claims are governed by the federal Portal-to-Portal Act's definition of compensable time (i.e., preliminary and postliminary activities must be integral and indispensable to the principal activities of the job). Some courts have denied class certification in rounding claims under the Portal-to-Portal Act, finding that determining compensability of the rounded time is not subject to common proof. *See, e.g.*, *Harris v. Georgia-Pacific Wood Prods. LLC*, No. 1:22-CV-2530-TWT, 2023 U.S. Dist. LEXIS 49156, *1015 (N.D. Ga. Mar. 23, 2003). While Plaintiffs continue to believe they would ultimately prevail on a contested certification motion, it would be irresponsible of them to ignore the risk created by *Buero* in assessing the reasonableness of the settlement. Second, the Oregon District Court in *Eisele v. Home Depot U.S.A., Inc.*, granted summary judgment to the defendant on the plaintiff's claim for penalties for willful withholding of wages based on a rounding policy—a claim which

---

[2] Plaintiffs also had a claim for penalty wages. The Court's recent ruling in *Eisele v. Home Depot U.S.A., Inc.*, No. 3:20-cv-01740-HZ, 2022 U.S. Dist. LEXIS 216588, at *22–32 (D. Or. Nov, 29, 2022) significantly complicated Plaintiffs' entitlement to penalty wages.

Plaintiffs here alleged. No. 3:20-cv-01740-HZ, 2022 U.S. Dist. LEXIS 216588, at *31–32 (D. Or. Nov. 29, 2022). Although Class Counsel is confident they would have ultimately prevailed on the merits of their claims, these decisions significantly increased the risk.

### b. The proposed method of distributing relief to the class is effective.

As this proposal is for an opt-out class settlement without a claims process, absent Class Members do not have to take *any action* to obtain relief. The Settlement Administrator will allocate each individual settlement payment proportionally based on the additional amount of wages that Class Members would have earned during the class period if they had been paid for the net amount of clocked-in time that rounded in Defendant's favor. Settlement Agreement ¶¶ 23, 33(a). If a Class Member's calculation is zero, their payment will be $25. *Id.* at ¶ 33(a).

The Settlement Administrator will mail individual settlement payments to Class Members who have not opted out. This method is effective because:

(1) using United States mail is authorized as a method for delivering Notice, per Rule 23(c)(2)(B);

(2) Defendant—each Class Member's current or former employer—has provided the Settlement Administrator with each Class Member's last-known mailing address (*see* LaPollo Decl. ¶ 3); and

(3) the Settlement Administrator used reasonable diligence to verify the accuracy of the addresses before mailing the Notice and reasonable diligence via skip tracing to obtain a current address for Notices that were returned as undeliverable. *Id.* at ¶ 4, 6.

Class Members will have 180 calendar days to cash their checks, after which the Settlement Administrator will remit the amounts associated with uncashed checks to Legal Aid Services of Oregon. Settlement Agreement ¶¶ 35, 47.

//

//

//

**c. The relief to the class is adequate considering the terms of the proposed award of attorneys' fees, including the timing of payment.**

Class Counsel had made its request for attorneys' fees in the amount of 25% of the common fund through a separate motion. ECF No. 23. This request is subject to Court approval and objections from class members. Fed. R. Civ. P. 23(h). Class Counsel will not be paid unless and until the Court approves their request. Settlement Agreement ¶ 32(a). If the Court approves their request, Class Counsel won't be paid until after the Court enters final judgment. *Id.* at ¶¶ 22, 34. This is the same timeframe that class members will receive their individual settlement payments. *Id.*

**d. No other agreements exist in connection with the proposal.**

Neither the parties nor their respective counsel have made any agreements in connection with this proposal other than those contained in the settlement agreement. Stutheit Decl. ¶ 11; *see also* Settlement Agreement ¶ 69 (integration clause stating that the settlement contains the entire agreement between the parties).

**4.    The proposed settlement treats Class Members equitably.**

The proposed settlement treats Class Members equitably relative to each other because their individual recovery is in proportion to the amount of time they were clocked in but not paid under Defendant's rounding policy. *See* Settlement Agreement ¶¶ 23, 33(a) (describing individual payment calculations); *see also Kang v. Fyson*, No. 22-15694, 2022 U.S. App. LEXIS 28358, at *7 (9th Cir. Oct. 12, 2022) (affirming the district court's approval of a pro rata calculation based on the number of shifts worked to allocate damages). This is a more equitable approach than providing the same amount to each class member because it will result in class members who were harmed more (i.e., had more unpaid clocked in time and therefore unpaid wages) receiving a greater slice of the pie. Class members who were not clocked in for more hours than they were paid under the rounding policy will still receive $25 in consideration of their release of claims. Settlement Agreement ¶ 33(a).

5.       **The proposed settlement passes scrutiny under the *Bluetooth* factors.**

When considering a motion for final approval of a class action settlement, the Court must apply the *Bluetooth* factors to "smoke out potential collusion." *E.g.*, *Briseño*, 998 F.3d at 1023. The factors evidencing potential collusion are: class counsel receiving a disproportionate share of the settlement; a "clear sailing" agreement where class counsel's fees are provided separately from class funds; and a reverter provision where fees not awarded revert to defendants rather than to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

a.   **The proposed attorney fee award is not a disproportionate share of the settlement.**

"[C]ourts must balance the proposed award of attorney's fees vis-à-vis the relief provided for the class in determining whether the settlement is adequate for class members." *Briseño*, 998 F.3d at 1024 (internal quotations omitted). This is because of the incentive for class counsel to "conspire with the defendant to reduce compensation for class members in exchange for a larger fee." *Id.* at 1025. In *Briseño*, the Ninth Circuit noted that the attorney fee award of almost $7 million was grossly disproportionate to the "relative scraps" of what the class would receive— less than a million dollars. *Id.* at 1026. In contrast, here, the proposed fee award will be no more than the Ninth Circuit's "benchmark" of 25% of the common fund, which equates to $1,837,500. Settlement Agreement ¶ 32(a); *see, e.g.*, *In re Bluetooth*, 654 F.3d at 942 (stating that courts typically calculate 25% of the common fund as the benchmark for a reasonable fee award). After deductions for costs and expenses, Plaintiffs' counsel reasonably estimates that the amount to be divided among class members will be approximately $5,400,000. Stutheit Decl. ¶ 7. Thus, the vast majority of the monies from the proposed settlement flow to class members—not to Class Counsel.

b.   **The existence of a "clear sailing" agreement**

Although a clear sailing agreement is not a "death knell" to approval of a class action settlement, the Court must "scrutinize the agreement for signs that the fees requested by counsel are unreasonably high." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610–11 (9th Cir. 2021)

(internal citation and quotation marks omitted). Although the proposed settlement agreement has a type of clear sailing provision,[3] the fee request is reasonable.

First, a request for attorneys' fees of 25% of the common fund is considered the benchmark in the Ninth Circuit. *E.g.*, *In re Bluetooth*, 654 F.3d at 942. Second, the fee request is for a percentage of the common fund, rather than an award separate from the class funds. As a result, the interests of Plaintiffs' counsel and Class Members are aligned—they both want to maximize the gross settlement amount. Thus, Plaintiffs' counsel has not infected the negotiations with their own self-interest at the expense of the class. *See, e.g.*, *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). Moreover, Defendant's interest—*minimizing* the gross settlement amount—was directly opposed to the interest that class members and Plaintiffs' counsel share to *maximize* the common fund, thereby negating any implication of collusion.

### c.  The settlement agreement does not have a reverter.

The settlement agreement does not include a reverter that returns unclaimed or unawarded monies to Defendant. Any amounts of attorneys' fees or costs that the Court does not approve will be added to the net settlement fund and distributed to class members who don't opt out. Ex. A ¶ 4(d). Monies from uncashed checks will go to Legal Aid Services of Oregon.[4] Settlement Agreement ¶ 35. The lack of a reverter further negates collusion.

//

//

---

[3] *See* Settlement Agreement ¶ 32(a) (Defendant agrees not to oppose Plaintiffs' request for attorneys' fees in the amount of 25% of the gross settlement amount).

[4] Legal Aid Services of Oregon (LASO) satisfies the "next best" test under the *cy pres* doctrine because LASO assists Oregonians with claims for unpaid wages, which is the Class Members' claim here. *Accord Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (holding that *cy pres* distribution must be guided by the objectives of the underlying statute and the interests of the silent class members).

C.    **The Court-Approved Class Notice Has Been Sent, Fulfilling the Requirements of FRCP 23(c)(2)(B) and Due Process.**

Rule 23(c)(2)(B) requires "the best notice [to class members] that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Procedural due process requires that the notice be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) (internal citations and quotations omitted). "[N]either Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

The Court approved the proposed Class Notice and notice plan as satisfying Rule 23(c)(2)(B) on July 17, 2023. ECF No. 21. The notice plan has now been implemented as proposed, as explained *supra* in Section III(E), thereby fulfilling the requirements of Rule 23(c)(2)(B) and affording Class Members due process.

D.    **The Objections Should Be Overruled Because the Settlement Is Fair, Reasonable, and Adequate, Which Is Further Evidenced by the Small Opt-Out Percentage.**

Objections are evaluated to determine if a settlement lacked fairness or adequacy or was the result of collusion. They are not evaluated based on "whether the final product could be prettier, smarter or snazzier." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). An objection must state whom it applies to and "state with specificity the grounds for the objection." FRCP 23(e)(5)(A). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Id.*; *see also id.* at 1025–26 (noting favorably that less than 0.1% of class members opted out).

//

//

1.      **The objections should be overruled.**

Two Class Members, Dr. Holly Shillington and Jared Ewing, objected. Dr. Shillington expressed her opinion that PeaceHealth has treated her fairly. Stutheit Decl. ¶ 12, Ex. D. Dr. Shillington's objection should be overruled because she does not dispute that the settlement is fair, reasonable, or adequate to *Class Members*. Rather, she contests the basis of Plaintiffs' lawsuit against Defendant. This is not a valid ground on which to object to a proposed class action settlement. Indeed, Dr. Shillington would have the same objection regardless of how favorable the settlement terms Plaintiffs secured for the benefit of the class were.

Jared Ewing's objection stated, "I think we can get more. . . . I know it should be at least $10,000 in backpay per person based on missed payment laws . . . . If my objection for more is not explored, I would still like to be included in the class action as is." *Id.* at Ex. E. Mr. Ewing's objection should also be overruled. Although not explicit, Class Counsel understands Mr. Ewing's objection to be on behalf of the entire class. His objection did not identify the basis for his assertion that each Class Member should get at least $10,000. In contrast, Class Counsel's expert analyzed the wage loss associated with Defendant's rounding policy based on the actual punch and pay records of class members and determined that the average wage loss per class member was $880.71.[5] Although Mr. Ewing wishes for a "prettier" settlement, wanting more money does not change the fact that this settlement is fair, reasonable, and adequate as proposed. In fact, it is more than 4 times as generous to class members than a rounding settlement approved by this Court. Stutheit Decl. ¶ 8, Ex. B & C. Moreover, his objection expressly states that—

---

[5] Plaintiff's expert concluded that the total wage loss due to rounding for the class in this case was $9,998,655. Dividing this total amongst the 11,353 class members yields an average wage loss of $880.71.

despite his wish for more—he wants to remain a Class Member under the current terms of the

settlement. Thus, the Court should overrule his objection. *See, e.g.*, *Ebarle v. Lifelock, Inc.*, No.

15-cv-00258-HSG, 2016 U.S. Dist. LEXIS 128279, at *14–16 (N.D. Cal. Sep. 20, 2016)

(overruling objections from several class members that the settlement was too low and, instead,

finding the settlement amount reasonable even though "the maximum value of Plaintiffs' claims

may have been higher . . .").

### 2. The extremely low percentage of opt-outs shows that the settlement is fair, reasonable, and adequate.

In addition to the FRCP 23 factors and the *Bluetooth* factors explained above, the

reactions of absent Class Members support the conclusion that the settlement in this case is fair,

adequate, and free from collusion. Only 36 class members, which equals 0.3% of the total class,

opted out of the settlement. LaPollo Decl. ¶ 14. This 0.3% opt-out rate is in line with the opt-out

rate in *Hanlon*, which the Ninth Circuit identified as a basis for affirming the district court's

approval of the settlement. Accordingly, as the overwhelming majority of the class has chosen to

stay in the class and receive their individual settlement payment, the settlement should be

approved as fair, reasonable, and adequate.

### E. JND's Costs to Administer the Settlement Should Be Approved.

JND has fulfilled its initial duties to implement the settlement since this Court's Order

appointing JND as the settlement administrator by, inter alia, updating Class Members' mailing

addresses, mailing the Court-approved Class Notice, performing skip tracing on and remailing

Class Notices that were returned as undeliverable, remitting objections received to the parties,

and compiling opt-outs. LaPollo Decl. ¶¶ 4–6, 11, 14. To date, JND's costs are $29,617.24. *Id.* at

¶ 16. JND reasonably anticipates incurring an additional $35,382.76 to complete its duties to

implement the settlement. *Id.* at ¶ 17. Therefore, Plaintiffs request that the Court approve payment to JND from the common fund in the amount of $65,000.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this motion for final approval and enter an order:

1. Finding that, under heightened scrutiny for potential collusion, the settlement is fair, adequate, and reasonable;

2. Granting final approval of the parties' Settlement Agreement;

3. Certifying the class for settlement purposes;

4. Overruling the objections to the settlement;

5. Excluding Class Members who timely requested to be excluded;

6. Directing Defendant to pay the settlement amount of $7,350,000 into a common fund held by JND Legal Administration LLC (JND) in trust by no later than 15 calendar days after the Settlement Effective Date;

7. Awarding Class Counsel's attorneys' fees in the amount of $1,837,500 and costs in the amount of $24,653.63–$26,653.63, as requested in Plaintiffs' Unopposed Motion for Attorneys' Fees and Costs;

8. Awarding Representative Plaintiff Tracy Davies a service award in the amount of $7,500;

9. Awarding Representative Plaintiff Ashley DeWitt a service award in the amount of $7,500;

10. Awarding the costs and expenses of the Settlement Administrator, JND in the amount of $65,000;

11. Directing JND to distribute all funds or amounts pursuant to the Settlement Agreement or by court order, including payments to Class Members, Representative Plaintiffs, and Class Counsel; and

12. Dismissing this case.

Dated: October 12, 2023.

s/ *Peter Stutheit*
Peter Stutheit OSB No. 061248

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Plaintiffs' Unopposed Motion for Final Approval with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such filing to the following:

> Timothy W. Snider, OSB No. 034577
> timothy.snider@stoel.com
> Melissa J. Healy, OSB No. 102176
> melissa.healy@stoel.com
> STOEL RIVES LLP
> 760 SW Ninth Avenue, Suite 3000
> Portland, OR 97205
> Telephone: 503.224.3380
> Facsimile: 503.220.2480
>
> *Attorneys for Defendant*

**DATED**: October 12, 2023.

s/ *Taylor Saastad,*_____
Taylor Saastad, Paralegal
**HKM EMPLOYMENT ATTORNEYS LLP**
